**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JOSE JORGE HERRERA LOPEZ,

*Petitioner*,

v. No. 2:26-cv-00279-SMD-GJF

MARKWAYNE MULLIN,[1] *et al.*,

*Respondents*.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Jose Jorge Herrera Lopez's Petition for Writ of Habeas Corpus ("Petition"), filed on February 5, 2026. Doc. 1. Petitioner is a native and citizen of Cuba. Doc. 1 at 1; Doc. 7 at 2. Respondents attach to their response to the Petition the declaration of Assistant Field Office Director Jose P. Ortez. *See* Doc. 7-1 ("Ortez Decl.").

Petitioner applied for admission into the United States on November 25, 2019, and was placed into the Migrant Protection Protocol program. He was then paroled into the country on or about March 22, 2021. Doc. 1 at 1; Ortez Decl. ¶ 5. On June 7, 2023, an immigration judge ("IJ") ordered Petitioner removed for failure to appear at his hearing. Doc. 1 at 1; Ortez Decl. ¶ 6. Petitioner then applied for lawful permanent residence under the Cuban Adjustment Act and U.S. Citizenship and Immigration Services ("USCIS") granted Petitioner an employment authorization document and a Social Security number. Doc. 1 at 1.

On May 14, 2025, Petitioner appeared at a USCIS interview in Miami, Florida related to his application and was arrested by immigration officers. Doc. 1 at 1; Ortez Decl. ¶ 7. On May

[1] Pursuant to Federal Rule of Civil Procedure 25(d), an action does not abate when a public officer who is a party in official capacity resigns or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party, and any misnomer not affecting the parties' substantial rights must be disregarded. While the court may order substitution at any time, the absence of such an order does not affect the substitution.

16, 2025, Enforcement and Removal Operations ("ERO") submitted a nomination to the Cuban government for the Petitioner's repatriation. Ortez Decl. ¶ 8. Since his arrest, Petitioner has been transferred between detention facilities. He was detained in Miami-Dade Krome Service Processing Center. Doc. 1 at 1. On May 23, 2025, Petitioner was transferred to the Otero County Processing Center in Chaparral, New Mexico. Doc. 1 at 1; Ortez Decl. ¶ 9.

On November 12, 2025, the Cuban government denied repatriation. ERO then nominated Mexico as a third country for removal. *Id.* ¶ 11. Mr. Ortez asserts that Petitioner was scheduled for removal on November 17, 2025, but he "failed to comply"; neither Mr. Ortez nor Respondents detail what the alleged failure involved. *Id.* ¶ 12. On December 2, 2025, ERO served Petitioner with a Notice of Removal to Mexico; Petitioner did not sign. *Id.* ¶ 13. On January 14, 2026, an ERO officer spoke to Petitioner, who "again refused removal to Mexico" and was "served with Failure to Comply documentation and again Petitioner refused to sign." *Id.* ¶ 16. On January 19, 2026, ERO Headquarters Removal Division identified over 2,000 Cuban nationals in custody whom the Cuban government declined to accept for repatriation; Petitioner was identified on the list. *Id.* ¶ 17. On January 23, 2026, a request was made for removal to Mexico under the Cuba, Haiti, Nicaragua, Venezuela Parole Program ("CHNV"). *Id.* ¶ 18. On February 3, 2026, a "request for update was sent to CVNH for removal." *Id.* ¶ 19.

Petitioner asserts that the first attempt to remove him to Mexico occurred after more than six months of detention. Doc. 10 at 1. Petitioner states that he was "subjected to multiple informal removal attempts to Mexico" without prior notice, a credible fear interview, and a risk assessment "consistent with non-refoulement obligations." *Id.* at 2. Petitioner provides that, on December 2, 2025, he was pressured by Immigration and Customers Enforcement ("ICE") officers to "sign documents consenting to removal to Mexico, under threat of federal criminal charges if he

refused." Doc. 2 at 2. He states that ICE attempted to remove him to Mexico on February 6, 2026, without prior notice, and that this "fact was not included in the Otero director's certification." Petitioner asserts that he has not received a bond hearing during the length of his detention. Doc. 10 at 3.

## LEGAL STANDARD

An application for habeas corpus pursuant to § 2241 may be granted only if the petitioner "is in custody in violation of the Constitution, or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003); *see also Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (holding that the district court properly exercised jurisdiction over a habeas petition challenging continued detention without a bonding hearing); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## DISCUSSION

### I. The Court Has Subject Matter Jurisdiction

The Court has subject matter jurisdiction to review Petitioner's claims. *See Tuck v. United Serv.'s Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988) (stating that a federal court has an independent obligation to assure itself of subject matter jurisdiction).

Respondents invoke 8 U.S.C. §§ 1252(a)(5) and (b)(9) to argue this Court lacks jurisdiction. They argue these statutes bar judicial review because the government detains Petitioner to execute his removal order. *See* Doc. 7 at 5–6. Respondents correctly note that § 1252 bars courts from reviewing the merits of a removal determination. *See id.*; *Vaupel v. Ortiz*, 244 F. App'x 892, 895 (10th Cir. 2007). Here, however, Petitioner does not seek that type of review.

Petitioner does not challenge the substance of a removal order or any findings regarding removability. Instead, he challenges his continued detention as a violation of the Due Process Clause. That constitutional claim differs from a challenge to a removal determination. *See Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008) (citing *Demore*, 538 U.S. at 517); *see also* 8 C.F.R. § 1003.19(d).

Petitioner's due process claim therefore does not arise "from the implementation or operation of the expedited removal order." *See Turgerel v. Mukasey*, 513 F.3d 1202, 1205 (10th Cir. 2008); *Vaupel*, 244 F. App'x at 895; *Mursalin v. Dedos*, No. 1:25-cv-00681-MIS-JMR, 2025 WL 3140824, at *8 (D.N.M. Nov. 10, 2025). Therefore, the jurisdictional bar under § 1252 does not apply.

Courts routinely distinguish detention challenges from challenges to removal orders. As another judge of this court explained, § 1252 "does not, however, foreclose claims challenging the length of an immigration detainee's confinement, because prolonged detention suggests that removal is not reasonably foreseeable." *Jimenez Chacon v. Lyons*, 811 F. Supp. 3d 1299, 1306 (D.N.M. 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)). The Court finds that reasoning persuasive. Section 1252 therefore does not deprive the Court of subject matter jurisdiction over Petitioner's habeas petition.

Additionally, the administrative exhaustion requirement is prudential and may be waived. Here, the Court finds that balancing of the interests of the individual in retaining prompt access to a judicial forum against the countervailing institutional interests favors waiver of the exhaustion requirement. *See Jimenez Chacon*, 811 F. Supp. At 1312 (finding significant individual liberty interests at stake favoring immediate judicial review, third country removal does not "require the exercise of agency expertise," courts are "well-equipped to analyze due process claims, especially

given the post-removal period detention framework laid out in *Zadvydas* and its progeny," and "judicial efficiency concerns are less relevant here because the factual context is not particularly complex or technical"); *see also Salazar-Martinez v. Lyons*, No. 2:25-cv-00961-KG-KBM, 2025 WL 3204807, at *1 (D.N.M. Nov. 17, 2025) ("Here, further administrative review by ICE would be futile because ICE headquarters already evaluated Ms. Salazar's custody and decided to continue her detention.").

II. Statutory Framework: 8 U.S.C. § 1231

The parties do not dispute that 8 U.S.C. § 1231 governs Petitioner's custody, since his removal order became administratively final in 2023. *See* Doc. 1 at 1; Doc. 7 at 2.

Under § 1231(a)(1), the government has a 90-day period in which to remove a noncitizen after a removal order becomes final. If the government is unable to effect removal within that 90-day period, continued detention becomes discretionary. *See* 8 U.S.C. § 1231(a)(6). Indefinite detention, however, is not permitted. *Zadvydas*, 533 U.S. at 689 ("In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention.").

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court established a "presumptively reasonable period of detention" of six months "for the sake of uniform administration in the federal courts." *Id.* at 701. After this six-month period, if the noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future, the government must respond with evidence sufficient to rebut the showing. *Id.*

Courts typically consider the cumulative time spent in detention when evaluating a habeas claim challenging detention as unreasonable per *Zadvydas*. *Vo v. Bondi*, No. 2:25-cv-02244, 2025 WL 3653722, at *3 (W.D. Wash. Dec. 17, 2025) ("The presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered."); *see, e.g.*, *Giorges v. Kaiser*, No. 25-cv-7683, 2025 WL 2898967, at *8 n.5 (N.D. Cal Oct. 10, 2025); *Bulle v. Wesling*, No. 26-cv-019, 2026 WL 183840, at *4 (D.R.I. Jan. 23, 2026).

III. Respondents Failed to Comply with Due Process Regarding Third Country Removal

Petitioner challenges Respondents' attempts to remove him to a third country without prior notice, a credible fear interview, and a risk assessment. Doc. 10 at 2. In their briefing, Respondents provide only that, after Cuba denied repatriation, they "nominated Mexico as a third country for removal." Ortez Decl. ¶ 11. Respondents assert that Petitioner was scheduled for removal on November 17, 2025, but he "failed to comply." *Id.* ¶ 12. On December 2, 2025, ERO served Petitioner with a Notice of Removal to Mexico and Petitioner did not sign it. *Id.* ¶ 13. On January 14, 2026, an ERO officer spoke to Petitioner, who "again refused removal to Mexico" and was "served with Failure to Comply documentation and again Petitioner refused to sign." *Id.* ¶ 16. Respondents do not assert any additional facts regarding Petitioner's lack of compliance, nor do Respondents state facts setting forth their own compliance with applicable due process pertaining to third country removal.

Numerous courts across the country have found unlawful ICE's recent third country removal policy of deporting individuals without providing any opportunity to be heard and to

present a fear-based claim. *See M.A. v. Baltazar*, No. 26-cv-00755-NYW, 2026 WL 809842, at *4 (D. Colo. Mar. 24, 2026) (collecting cases); *Nguyen v. Charles*, No. 1:25-cv-01592-TLN-CSK, 2025 WL 3492117, at *6 (E.D. Cal. Dec. 4, 2025) (collecting cases and finding ICE's third country removal policy contrary to Ninth Circuit precedent); *Pacheco v. Baltazar*, No. 26-cv-01176-PAB, 2026 WL 1223414, at *4 (D. Colo. May 5, 2026).

In *Pacheco*, the court explained as follows:

> Providing petitioner with notice and an opportunity to challenge removal to a third country could prevent him being removed to a third country where he might also face a credible risk of torture. The July 9, 2025 [ICE] memorandum, however, provides for the possibility that petitioner will be removed without notice. Even if ICE must receive "credible assurances" that petitioner will not be tortured, this deprives petitioner of the opportunity to argue that such assurances are, in fact, not credible. Furthermore, it is contrary to the mandate that noncitizens are entitled to notice and an opportunity to challenge their removal. Thus, many courts have found that ICE's third-country removal policies violate the constitutional right to due process.

*Pacheco*, 2026 WL 1223414, at *4 (first citing *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); and then citing *Esmaeili v. Noem*, No. 26-cv-0203-GPC-JLB, 2026 WL 240661, at *6 (S.D. Cal. Jan. 29, 2026)).

In its order, the *Pacheco* court also cited to *D.V.D. v. U.S. Dep't of Homeland Sec.*, where the court provided as follows:

> All removals to third countries, *i.e.*, removal to a country other than the country or countries designated during immigration proceedings as the country of removal on the non-citizen's order of removal, *see* 8 U.S.C. § 1231(b)(1)(C), must be preceded by written notice to both the non-citizen and the non-citizen's counsel in a language the non-citizen can understand. Following notice, the individual must be given a meaningful opportunity, **and a minimum of ten days**, to raise a fear-based claim for CAT protection prior to removal. If the non-citizen demonstrates "reasonable fear" of removal to the third country, Defendants must move to reopen the non-citizen's immigration proceedings. If the non-citizen is not found to have demonstrated a "reasonable fear" of removal to the third country, Defendants must provide a meaningful opportunity, and a minimum of fifteen days, for the non-citizen to seek reopening of their immigration proceedings.

No. CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass. 2025).

Here, Petitioner is a citizen of Cuba. Cuba refused his repatriation. Respondents then attempted to remove Petitioner to Mexico, a third country. The record reflects that Petitioner was not afforded an opportunity to challenge his removal to Mexico and present a fear-based claim. The record also shows that Petitioner was only provided written notice of removal to Mexico *after* the first attempt to remove him to Mexico. *See* Ortez Decl. ¶¶ 12-14. Additionally, Respondents only vaguely assert that he "failed to comply" with removals to Mexico. *Id.* ¶ 12. But as Respondents do not provide that they complied with applicable due process, any such attempts at removal to Mexico were unlawful. *See Sanchez Servellon v. Baltazar*, No. 26-cv-2908-RMR, 2026 WL 2797061, at *1 (D. Colo. Sept. 18, 2026) ("This Court and many other courts across the country 'have found that ICE's third-country removal policies violate the constitutional right to due process' when petitioners are not provided 'with notice and an opportunity to challenge his removal before removing him to a third country.'" (citing *Pacheco*, 2026 WL 1453640, at *4)).

IV. <u>Petitioner's Continued Detention Violates 8 U.S.C. § 1231 Because His Removal Is Not Reasonably Foreseeable</u>

Respondents note that once the presumptively constitutional six-month period under *Zadvydas* elapses, Petitioner bears the burden to show his detention has become prolonged and potentially unlawful because there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See* Doc. 7 at 4. The Court finds that Petitioner has met his initial burden of proof and Respondents have failed to rebut this showing.

First, Petitioner's detention period significantly exceeds the presumptively constitutional six-month limit. Petitioner was ordered removed in June 2023 and detained almost two years later,

in May 2025. Since May 2025, he has been continuously detained. Thus, as of the present date, he has been detained for approximately 16 months. *See* Doc. 7 at 2.

In *Abiodun v. Musakey*, the court distinguished *Zadvydas*, noting that the *Zadvydas* petitioners faced indefinite detention because "their countries of origin would not accept them." 264 F. App'x 726, 729 (10th Cir. 2008). By contrast, the petitioner's country of origin in *Abiodun* had issued travel documents, and ICE had successfully placed the petitioner on chartered flights, leading the court to find a likelihood of removal in the foreseeable future. The present case is analogous to *Zadvydas* and distinguishable from *Abiodun*.

Here, Cuba denied repatriation in November 2025. Ortez Decl. ¶ 11. Thereafter, Respondents attempted to remove Petitioner to Mexico, a third country. Respondents present no facts indicating that they complied with applicable due process by granting Petitioner the opportunity to challenge his removal to Mexico and present a fear-based claim. *See* Doc. 7. It follows that Respondents' argument that "Petitioner's removal has been delayed solely due to his own failure to comply with lawful third country removal" is without merit. *Id.* at 4. Respondents do not set forth they complied with applicable due process, first, in providing Petitioner written notice of removal to a third country in a language he could understand and, second, in providing Petitioner the reasonable opportunity to present any fear-based claim and be heard regarding a challenge to removal to Mexico. Indeed, Respondents assert that they first attempted to remove Petitioner to Mexico *prior* to providing any written notice of such removal; only afterwards did Respondents provide written notice (though it is unclear from Respondents' briefing whether it was in a language Petitioner could understand). *See* Ortez Decl. ¶ 14. Regardless, Respondents do not provide that Petitioner was ever afforded the opportunity to be heard regarding said removal and present a fear-based claim.

Respondents' vague and conclusory assertions regarding Petitioner's unspecified failure to comply with unlawful third country removal are unpersuasive. *See* 8 C.F.R. § 241.4(g)(1)(ii) ("if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal"); *Garcia v. Warden, Cent. Valley Annex*, No. 1:26-cv-04659-DJC-JDP, 2026 WL 2254380, at *3 (E.D. Cal. Aug. 4, 2026) (noting that "detention based on a Petitioner's refusal to reasonably cooperate could undermine their claim" but that the "Government cannot use indefinite detention to manufacture noncitizens' consent to removal to Mexico under the standing agreement. To adopt the Government's position on the use of detention to strong-arm third-country removals would not only undermine the consent required in those removals but also sanction the use of detention to coerce otherwise unavailable deportations").

Petitioner sets forth that Respondents have detained him for 16 months and failed to effectuate any lawful order of removal, and has therefore shown there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents do not indicate that they will comply with applicable due process and lawfully effectuate third country removal in a reasonably foreseeable timeframe, and therefore fail to rebut Petitioner's showing.

Courts in this circuit have reached similar conclusions. In *Salazar-Martinez v. Lyons*, another judge of this court granted the petition and ordered release, finding a violation of the Fifth Amendment due to prolonged detention and noting that "[a]llowing the Government to exhaust all potential countries would effectively result in unconstitutional indefinite detention." 2025 WL 3204807, at *2. In *Nfumu v. Grant*, the court granted the petition and ordered release, finding prolonged detention after a final order of removal, and noting that the "Government's decision to

seek third-country removal without any evidence in the record that a petitioner has a legally meaningful connection to the relevant third countries under 8 U.S.C. § 1231(b)(2)(E)(i–iii) also weighs in Petitioner's favor." No. CIV-25-1574-J, 2026 WL 865743, at *4 (W.D. Okla. Feb. 26, 2026), *report and recommendation adopted*, No. CIV-25-1574-J, 2026 WL 637618 (W.D. Okla. Mar. 6, 2026).

And in *Barcena-Lugo v. Anda-Ybarra*, another judge of this court granted the petition and ordered release, finding the petitioner's detention had become prolonged under the *Zadvydas* framework and respondents had failed to rebut the petitioner's showing of no significant likelihood of removal. The *Barcena-Lugo* court found that "the Government has not presented sufficient evidence of Petitioner's alleged noncooperation with ICE's efforts to remove him to Mexico to foreclose his claim under § 241.4(g)(1)(ii)." The court noted that the "presiding ICE officer states that 'Petitioner's lack of cooperation creates significant obstacles to removal.' But the Government does not provide evidence that Petitioner has taken bad-faith, obstructionist steps that would restart the removal clock under § 241.4(g)(1)(ii)." The court concluded that "Petitioner failed to execute documentation related to his third-country removal—but that refusal, without more, does not defeat his claim." No. 1:26-cv-02616-KG-GJF, 2026 WL 2690250, at *2 (D.N.M. Sept. 14, 2026); *see also Garcia*, 2026 WL 2254380, at *2 ("And Petitioner's lack of compliance casts further doubt on the Respondent's ability to effectuate his third-country removal to Mexico. Indeed, district courts have repeatedly found that similarly situated petitioners — Cuban nationals whom the Government is attempting to remove to Mexico against their will — have met their initial burden, especially because the current standing agreement with Mexico appears to be conditioned on the consent of the noncitizen.") (citation omitted).

## CONCLUSION

Accordingly, it is hereby **ORDERED**:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**;
2) Respondents **SHALL** release Petitioner within 48 hours of this Order being entered, without any new conditions of release;
3) Respondents **SHALL** provide Petitioner with all his personal belongings and facilitate Petitioner's transportation from the detention facility and provide all necessary identity and travel documents to return to his primary address;
4) Respondents are **ENJOINED** from re-arresting or re-detaining Petitioner absent a change in circumstances showing that his removal is reasonably foreseeable, for instance, through communications from a foreign government agreeing to accept him, the procurement of travel documents, and a credible anticipated timeline for removal;
5) Respondents **SHALL NOT** remove Petitioner to any third country without first providing him with constitutionally compliant procedures, including written notice in a language he can understand and the opportunity to challenge his removal and present a fear-based claim;
6) Respondents **SHALL** file a notice of compliance within two business days of Petitioner's release. This notice must specify: (1) the date, (2) the time, and (3) the manner of departure (e.g., transport to a bus station, designated drop-off location, or other arrangements). Additionally, the notice must include (4) a description or copies of all discharge and travel documents provided to Petitioner at the time of release;

7) This Order resolves all pending motions (*see* Docs. 2, 6, 11);

8) The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

**IT IS SO ORDERED**.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**